[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, Slip Opinion No. 2020-Ohio-1056.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1056

PHOENIX LIGHTING GROUP, L.L.C., ET AL., APPELLEES, *v.* GENLYTE THOMAS GROUP, L.L.C., APPELLANT, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, Slip Opinion No. 2020-Ohio-1056.]

*Tort—Punitive damages—Attorney fees—A strong presumption exists that the reasonable hourly rate multiplied by the number of hours worked, the "lodestar," is the proper amount for an attorney-fee award— Enhancements to a lodestar should be granted rarely—Enhancements are appropriate when an attorney produces objective and specific evidence that enhancement is necessary to account for a factor not already subsumed in the lodestar calculation—A trial court has discretion to modify the presumptive calculation of attorney fees (the reasonable hourly rate multiplied by the number of hours worked), but any modification must be accompanied by a rationale justifying the modification.*

(No. 2018-1076—Submitted September 10, 2019—Decided March 25, 2020)

Appeal from the Court of Appeals for Summit County, No. 28082,
2018-Ohio-2393.

_____

**SYLLABUS OF THE COURT**

1.  There is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the "lodestar," is the proper amount for an attorney-fee award. Enhancements to the lodestar should be granted rarely and are appropriate when an attorney produces objective and specific evidence that an enhancement of the lodestar is necessary to account for a factor not already subsumed in the lodestar calculation. (*Perdue v. Kenny A.*, 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010), followed; *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), modified.)

2.  A trial court has discretion to modify the presumptive calculation of attorney fees—the reasonable hourly rate multiplied by the number of hours worked—but any modification must be accompanied by a rationale justifying the modification.

_____

**STEWART, J.**

{¶ 1} Appellees, Phoenix Lighting Group, L.L.C., and Jack Duffy and Associates, Inc. (collectively, "Phoenix"), were awarded a jury verdict against appellant, Genlyte Thomas Group, L.L.C., a.k.a. Daybrite, Capri, Omega ("DCO"), for compensatory and punitive damages, prejudgment interest, treble damages, and litigation costs and expenses that totaled $5,518,335. When a party is awarded punitive damages, a trial court has the discretion to order the losing party to pay the prevailing party's attorney fees. The beginning point for determining the award of attorney fees is the reasonable hourly rate multiplied by the number of hours worked, a calculation that is sometimes referred to as the "lodestar." The trial court

established a lodestar of $1,991,507. The trial court then doubled the attorney fees because of the complexity and length of the case and the success achieved. The enhancement resulted in an award of $3,983,014 in attorney fees. The court of appeals affirmed the award.

{¶ 2} We accepted jurisdiction over this appeal to consider the circumstances that warrant enhancement to the lodestar. We reaffirm our holding in *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), syllabus, to the extent that it held that a lodestar can be modified, but we hold, consistent with the decision of the United States Supreme Court in *Perdue v. Kenny A.*, 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010), that the lodestar is presumptively reasonable and that enhancements to the lodestar should be rarely granted and allowed only when the prevailing party has presented evidence that enhancement is necessary to provide reasonable compensation, that is, if the lodestar does not take into consideration any factor that may be properly considered in determining a reasonable fee.

{¶ 3} Because the lodestar reflected a reasonable fee based on the prevailing market rate for the services rendered by Phoenix's attorneys, we reverse the judgment of the court of appeals as to the award of attorney fees, and we remand this cause to the trial court to enter judgment awarding attorney fees in the amount of the calculated lodestar.

**FACTS**

{¶ 4} Phoenix, an agency owned by Patrick Duffy, sold lighting products manufactured by Acuity Brand Lighting. Two Phoenix employees, Jason Brown and Guy Day, began negotiations with Duffy to buy Phoenix. At the same time that the employees were negotiating with Duffy, they approached DCO—a direct competitor of the Acuity Brand Lighting products sold by Phoenix—about starting their own sales agency and representing Acuity products. Using information they received from their employment at Phoenix, along with financial assistance from

DCO, the two employees formed Intelligent Illumination, a sales agency that would represent products manufactured by DCO. Intelligent Illumination hired several Phoenix employees. Phoenix eventually went out of business.

{¶ 5} Phoenix filed a lawsuit stating causes of action against DCO for, among other things, tortious interference with business relationships, tortious interference with contractual relationships, misappropriation of trade secrets, unfair competition, civil conspiracy, and frivolous conduct. Brown and Day were also named as defendants, but they settled during trial. A jury returned a verdict finding DCO liable for tortious interference with a business relationship, misappropriating trade secrets, and engaging in a civil conspiracy with Brown and Day. In a separate proceeding, the jury awarded Phoenix punitive damages and reasonable attorney fees. In total, Phoenix was awarded $1,680,970 in compensatory damages and $3,661,940 in punitive damages.

{¶ 6} In a posttrial hearing on attorney fees, the trial court established a lodestar figure of $1,991,507, finding that that amount "accurately represents the amount of attorney fees * * * that would have been charged to Phoenix under a standard hourly rate agreement." It then considered whether an enhancement of that amount was warranted. It determined that the case was "quite complex, both factually and legally," that the case took up so much of counsel's time that they were hindered "from accepting and pursuing other cases and clients," that Phoenix's attorneys "obtained a highly favorable outcome," that the hybrid hourly fee and contingent nature of the compensation "forced Phoenix's counsel to assume a great financial risk," and that all of the attorneys involved in this case were "of high caliber," were "highly experienced, and maintained excellent reputations." Based on these determinations, the trial court applied a multiplier of two and awarded a total of $3,983,014 in attorney fees.

{¶ 7} The Ninth District Court of Appeals affirmed the verdict and compensatory-damages award but concluded that the damages relating to the claim

for conspiracy to misappropriate trade secrets were subject to the punitive-damages cap in R.C. 1333.63. On the issue of attorney fees, the court of appeals noted that after a court has calculated the lodestar, the court next should consider whether to adjust the lodestar. 2018-Ohio-2393, ¶ 69. After considering the factors that the trial court relied upon as a basis for enhancing the lodestar, the court of appeals concluded that it could not say that the "trial court abused its discretion in applying a multiplier of two to the lodestar amount in this case." *Id*. at ¶ 71.

{¶ 8} We accepted jurisdiction over the following proposition of law:

> Because there is a strong presumption that the lodestar method yields a sufficient attorney fee, enhancements should be granted rarely and only where the applicant seeking the enhancement can produce objective and specific evidence that an enhancement is necessary to compensate for a factor not already subsumed within the Court's lodestar calculation.

## ANALYSIS

{¶ 9} Ohio courts generally follow the "American rule" with respect to an award of attorney fees: each party is responsible for its own attorney fees. *Wilborn v. Bank One Corp*., 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. An exception to the American rule allows an award of attorney fees to the prevailing party as an element of compensatory damages when the jury finds that punitive damages are warranted. *Zoppo v. Homestead Ins. Co*., 71 Ohio St.3d 552, 558, 644 N.E.2d 397 (1994); *New York, Chicago & St. Louis RR. Co. v. Grodek*, 127 Ohio St. 22, 24-25, 186 N.E. 733 (1933) ("facts which justify the infliction of exemplary damages will also justify the jury in adding the amount of counsel fees to the verdict, not as a part of exemplary damages, but as compensatory damages"). *See Galmish v. Cicchini*, 90 Ohio St.3d 22, 35, 734 N.E.2d 782 (2000).

**{¶ 10}** Our decisions determining what are reasonable attorney fees have been guided by decisions issued by the United States Supreme Court. For example, in *Bittner*, we quoted *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), for the proposition that the starting point for determining attorney fees is the lodestar: " 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' " *Bittner*, 58 Ohio St.3d at 145, 569 N.E.2d 464, quoting *Hensley* at 433. We agreed with the Supreme Court that this calculation " 'provides an objective basis on which to make an initial estimate of the value of the lawyer's services.' " *Id*., quoting *Hensley* at 433.

**{¶ 11}** "A reasonable hourly rate is the prevailing market rate in the relevant community, *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), given the complexity of the issues and the experiences of the attorney * * *." *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 4. "[T]he prevailing market rate can often be calculated based on a firm's normal billing rate because, in most cases, billing rates reflect market rates, and they provide an efficient and fair short cut for determining the market rate." *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 422 (3d Cir.1993).

**{¶ 12}** When the Supreme Court considered the calculation, it stated that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the * * * court to adjust the fee upward or downward, including the important factor of the 'results obtained.' " *Hensley* at 434. We followed this principle in *Bittner* and held that for an award of attorney fees made under R.C. 1345.09(F)(2) of the Consumer Sales Practices Act, R.C. 1345.04 et seq., "the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B) [now Prof.Cond.R. 1.5(a)]." *Bittner* at syllabus. (Prof.Cond.R. 1.5(a) superseded former DR 2-106,

but the two rules are substantially the same.) Prof.Cond.R. 1.5(a) lists various factors to be considered in determining the reasonableness of a fee charged by a lawyer:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) Whether the fee is fixed or contingent.

{¶ 13} In the years after *Hensley* was decided, the United States Supreme Court backed away from enhancements based on factors like those contained in Prof.Cond.R. 1.5(a). For example, in *Blum* at 898-900, the court held that the novelty and complexity of the issues, any special skill of counsel, the quality of representation, and the results obtained, are all accounted for in the initial lodestar computation. The court rejected the argument that an upward adjustment to the lodestar is never permissible but stated that when "the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable,

the resulting product is presumed to be the reasonable fee." *Id*. at 897. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), the court stated that the lodestar accounts for most, if not all, of the relevant factors constituting a reasonable fee and that it is unnecessary to adjust the fee for an attorney's superior performance to serve the statutory purpose of helping plaintiffs to secure legal assistance. And in *Burlington v. Dague*, 505 U.S. 557, 563, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the court rejected enhancements to a fee award based on the contingent nature of payment, finding that the contingency factor is already incorporated into the lodestar and that enhancing a fee on that basis would result in "double counting" that could encourage attorneys to bring meritless claims.

{¶ 14} The court's most significant adjustment to its lodestar jurisprudence came in *Perdue*, 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494. In that case, a district court established a lodestar of approximately $6 million for fees in a case in which attorneys had successfully brought a civil-rights class action against the state of Georgia. *Id.* at 547-548. The district court enhanced the lodestar by 75 percent based on the quality of representation, including the contingency of the case and the fact that counsel had not been paid as the action progressed but had instead advanced the cost of the litigation. *Id*. at 548-549. The enhancement increased the attorney fees to approximately $10.5 million. *Id.*

{¶ 15} The court acknowledged again that the lodestar could be enhanced but cautioned that enhancement should be awarded only in rare and exceptional circumstances. *Id*. at 552. It reaffirmed the proposition that a court may not enhance an award based on a factor that is subsumed in the lodestar elements of hours and rate, noting, as examples, that the complexity of a case is reflected in the number of billable hours and that the quality of representation is reflected in the reasonable hourly rate. *Id*. at 553. In addition, the court stressed that any enhancement to the lodestar must be based on "specific proof" showing that the

attorney should be "compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes." *Id*. at 555.

{¶ 16} Our holding in *Bittner*—that a court may modify a fee calculation based on the application of the factors set forth in what is now Prof.Cond.R. 1.5(a)—established the lodestar as an " 'initial estimate' " of a reasonable fee. *Bittner*, 58 Ohio St.3d at 145, 569 N.E.2d 464, quoting *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933, 76 L.Ed.2d 40. But nearly all of those factors are included as part of the hourly fee used to calculate the lodestar. *Perdue* at 553.

{¶ 17} It is simple economics that an attorney charges an hourly rate that takes into account the difficulty of the question involved, the opportunity cost, the time limitations imposed by the client, the skill requisite to perform a legal service, the attorney's professional relationship with the client, and the fee customarily charged in the jurisdiction for similar legal services. *See, e.g., In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litigation*, 867 F.3d 791, 792 (7th Cir.2017) (rejecting lodestar enhancement based on the complexity of the case, the degree of success, and the public interest advanced by the litigation "because novelty and complexity influence the base fee—the more novel and complex a case, the more hours will be billed and the higher the hourly billing rates will be"). Thus, the factors in Prof.Cond.R. 1.5(a), including the results obtained, are subsumed within the lodestar; they do not enhance the lodestar. *Blum*, 465 U.S. at 900, 104 S.Ct. 1662, 176 L.Ed.2d 494 ("Because acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award"). It is only in the rare and exceptional case that the lodestar may be enhanced and "only to the extent it can be shown that [superior results] are the result of superior attorney performance." *Perdue*, 559 U.S. at 554, 130 S.Ct. 1662, 176 L.Ed.2d 494. Thus, "an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure

the attorney's true market value, as demonstrated in part during the litigation." *Id.* at 554-555.

{¶ 18} However, a trial court's discretion to enhance the award of attorney fees is limited:

It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement. Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case.

*Perdue*, 559 U.S. at 558, 130 S.Ct. 1662, 176 L.Ed.2d 494.

{¶ 19} We agree with the reasoning in *Perdue* and hold that there is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the "lodestar," is the proper amount for an attorney-fee award. Enhancements to the lodestar should be granted rarely and are appropriate when an attorney produces objective and specific evidence that an enhancement of the lodestar is necessary to account for a factor not already subsumed in the lodestar calculation. In *Perdue*, for example, the Supreme Court explained that an enhancement might be appropriate when "the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id.* at 554-555. But to provide a calculation that is "objective and reviewable," any adjustment in a case must be made "in accordance with specific

proof linking the attorney's ability to a prevailing market rate." *Id.* We agree with this reasoning.

{¶ 20} A party seeking an enhancement to the calculation of attorney fees based upon the reasonable hourly rate multiplied by the number of hours worked bears the burden of presenting evidence to establish that an adjustment is appropriate based on a factor not already subsumed within the lodestar. A trial court has discretion to modify the presumptive calculation of attorney fees—the reasonable hourly rate multiplied by the number of hours worked—but any modification must be accompanied by a rationale justifying the modification. We therefore modify *Bittner* to the extent that it could be viewed as allowing enhancements to the lodestar as a matter of course. And here, we find that Phoenix did not carry its burden of showing that attorney-fee enhancement was necessary.

{¶ 21} Phoenix argues that DCO waived its right to argue that *Perdue* should apply because it did not ask the trial court to apply it. Ordinarily, appellate courts "will not consider a question not presented, considered or decided by a lower court." *Kalish v. Trans World Airlines, Inc.*, 50 Ohio St.2d 73, 79, 362 N.E.2d 994 (1977). But "new arguments relating to preserved claims may be reviewed." (Emphasis deleted.) *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1304 (11th Cir.2008), fn. 3. Once a "claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). "Offering a new argument or case citation in support of a position advanced in the district court is permissible—and often advisable." *Secy. United States Dept. of Labor v. Preston*, 873 F.3d 877, 883 (11th Cir.2017), fn. 5.

{¶ 22} There is no question that DCO objected to any enhancement of the lodestar during the attorney-fee hearing and on appeal. By citing *Perdue*, DCO is supplementing its preserved claim that there should be no enhancement of the lodestar.

{¶ 23} Phoenix also argues that we should not apply *Perdue* to all fee-shifting cases because it removes a trial court's discretion to tailor an award of fees to specific facts and circumstances. Phoenix maintains that the facts support its enhancement because DCO engaged in malicious behavior for an extended period of time and pursued a litigation strategy meant to "expense Phoenix into submission."

{¶ 24} However, Phoenix does not claim that the lodestar did not result in reasonable compensation. Even if DCO engaged in conduct that drew out the litigation or made it more complicated, the number of hours that Phoenix's attorneys billed should reflect that fact. To the extent that Phoenix seeks a lodestar enhancement to deter "malevolent behavior" by a party, when attorney fees are awarded incident to punitive damages, they are nonetheless compensatory damages. *New York, Chicago & St. Louis. RR. Co.*, 127 Ohio St. at 24-25, 186 N.E. 733. In this case, attorney fees were awarded based on DCO's conduct.

{¶ 25} Phoenix also argues that it was entitled to attorney fees based on the jury's finding that DCO violated the Uniform Trade Secrets Act, R.C. 1333.61 et seq. While it is true that R.C. 1333.64 allows a trial court to award reasonable attorney fees to the prevailing party when a claim of misappropriation of a trade secret is made in bad faith or the misappropriation is willful and malicious, the trial court did not award attorney fees under that statute. The jury's verdict in the punitive-damages phase of the trial stated: "Having awarded punitive damages, we further find that plaintiff, Phoenix Lighting Group LLC shall be entitled to reasonable attorney fees as determined by the trial court judge." That award was confirmed by a jury interrogatory: "Jury Interrogatory No. 3. Having awarded punitive damages, do you find that reasonable attorney fees should be awarded against defendant, DCO? Yes." While Phoenix may have been entitled to attorney fees for DCO's violation of the Uniform Trade Secrets Act, attorney fees were not

12

awarded on that basis—they were awarded solely because of the punitive-damages award.

{¶ 26} In this case, the trial court heard evidence relating to "the fee agreements; the modification of fee agreements; the various hourly rates and adjustments of hourly rates; the bills generated by other firms and attorneys who performed work on the matter; and the time, labor, effort and level of difficulty and expertise required of the attorneys involved in the litigation of this matter." In addition, the trial court stated that expert testimony attested to the reasonableness of both the fees charged and the number of hours billed. Based on this evidence, the trial court stated that "the lodestar calculation of $1,991,507 accurately represents the amount of attorney fees, for all five involved firms, that would have been charged to Phoenix under a standard hourly rate agreement."

{¶ 27} Having concluded that the lodestar accurately represented the amount of attorney fees involved, the trial court's inquiry should have ended. Instead, the trial court stated that it was "[m]oving beyond the lodestar figure" to consider the factors in Prof.Cond.R. 1.5(a). With the exception of "overall success," all of the factors considered by the trial court—the time and labor required, the novelty and difficulty of the questions involved, the skill needed to perform the legal service properly, the likelihood that the acceptance of the particular employment precluded other employment, the time limitations imposed by the client or by the circumstances, and the experience, reputation, and ability of the lawyer—were subsumed within the rates charged and the number of hours billed.

{¶ 28} The only Prof.Cond.R. 1.5(a) factor not directly included in the hourly rate charged by Phoenix's attorneys was Prof.Cond.R. 1.5(a)(4)—the results obtained. This factor is relevant only when the lodestar does not adequately measure the attorney's true market value, as demonstrated in part during the litigation. Phoenix's expert considered Prof.Cond.R. 1.5(a)(4) when stating his

opinion that a $1.9 million attorney-fee award was a "reasonable fee," testifying that one of the factors that he considered when arriving at his opinion was "the result that was achieved" by Phoenix's attorneys. It follows that Phoenix's attorneys were reasonably compensated based on the Prof.Cond.R. 1.5(a) factors, so there should have been no enhancement to the lodestar. We therefore reverse the portion of the court of appeals' judgment affirming the award of attorney fees, and we remand the cause to the trial court with instructions to issue a final judgment granting Phoenix attorney fees in the amount of $1,991,507.

Judgment reversed in part<br>and cause remanded.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, and DONNELLY, JJ., concur.

KENNEDY, J., concurs, with an opinion.

FISCHER, J., concurs, with an opinion.

_____

**KENNEDY, J., concurring.**

{¶ 29} I concur in the majority opinion regarding the circumstances that warrant enhancement to the lodestar amount in a trial court's calculation of an award of appropriate attorney fees. I fully agree that the factors regarding the reasonableness of an attorney fee set forth in Prof.Cond.R. 1.5(a) should be considered in determining the lodestar amount rather than in modifying the lodestar amount. *See State ex rel. Kesterson v. Kent State Univ.*, 155 Ohio St.3d 1447, 2019-Ohio-1852, 122 N.E.3d 209, ¶ 8 (Kennedy, J., dissenting). I write only to address the role that Prof.Cond.R. 1.5(a) should play in the calculation of reasonable attorney fees.

{¶ 30} As the majority relates, this court, in *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991), set forth factors for awarding attorney fees. In *Bittner*, we held, "When awarding reasonable attorney fees * * *,

the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by the application of the factors listed in [former] DR 2-106(B) [now Prof.Cond.R. 1.5(a)]." *Id.* at the syllabus. That original calculation is known as the lodestar amount.

{¶ 31} Prof.Cond.R. 1.5(a) sets forth factors to consider when determining whether a fee is reasonable:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent.

{¶ 32} This court today modifies *Bittner*, recognizing that the Prof.Cond.R. 1.5(a) factors are appropriately considered in the determination of the lodestar amount rather than used to adjust the lodestar amount. This is correct—since the

lodestar calculation "considers the 'reasonableness' of the hours charged, it follows that the Prof.Cond.R. 1.5(a) factors should be considered when determining what is reasonable." *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 32 (Kennedy, J., concurring in part and dissenting in part). But the majority writes that those factors "are subsumed within the lodestar," that is, that "[i]t is simple economics that an attorney charges an hourly rate that takes into account the difficulty of the question involved, the opportunity cost, the time limitations imposed by the client, the skill requisite to perform a legal service, the attorney's professional relationship with the client, and the fee customarily charged in the jurisdiction for similar legal services." Majority opinion at ¶ 17. My concern is that the majority's statements will encourage trial courts to assume that the Prof.Cond.R. 1.5(a) factors are already incorporated into an attorney's hourly rate. Instead, I would make clear that a trial judge determining an attorney-fee award should specifically and individually take into account the relevant factors set forth in Prof.Cond.R. 1.5(a) to determine the reasonableness of the attorney's hourly rate and time expended. *See, e.g., Harris* at ¶ 80-87 (Kennedy, J., concurring in part and dissenting in part). A methodical application of the Prof.Cond.R. 1.5(a) factors provides the structure for an appropriate award of attorney fees. And a properly calculated lodestar amount will only in rare cases require modification by the trial court.

––––––––––––––––––––

**FISCHER, J, concurring.**

{¶ 33} I agree with the majority that the lodestar is the presumed proper amount for an attorney-fee award and that enhancements to the lodestar should be granted rarely and are appropriate only when an attorney produces objective and specific evidence that an enhancement is necessary to account for a factor not already subsumed in the lodestar calculation. I write separately to identify the time value of money as an additional factor that may be considered, in addition to the

Prof.Cond.R. 1.5(a) factors that are not subsumed in the lodestar calculation, when evaluating whether an enhancement to the lodestar is necessary.

{¶ 34} The lodestar generally accounts for the relevant factors constituting a reasonable attorney fee. However, the lodestar may not adequately factor in the time value of money, especially in cases that take years to resolve and in cases that involve contingent-fee agreements or hybrid-fee agreements (hybrid-fee agreements are agreements that contain elements of various types of attorney-fee agreements, including contingent, hourly, or flat agreements, *see Gilson v. Am. Inst. of Alternative Medicine*, 2016-Ohio-1324, 62 N.E.3d 754, ¶ 127 (10th Dist.), fn. 2).

{¶ 35} Various courts have noted that the time value of money is a relevant factor in considering an enhancement to the lodestar calculation, especially in cases involving contingent-fee agreements. *See Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 660 (7th Cir.1985) and cases cited therein. Recognizing the importance of the time value of money, especially in cases involving contingent fees, is one of the few ways to ensure that attorney-fee awards function to fully compensate for the services rendered by the attorney.

{¶ 36} Ohio courts have recognized the importance of the time value of money as a component of compensatory damages under Ohio common law, *see Federated Mgt. Co. v. Coopers & Lybrand*, 10th Dist. Franklin No. 03AP-204, 2004-Ohio-4785, ¶ 12, and as support for awarding postjudgment interest on attorney-fee awards, *Parker v. I&F Insulation Co., Inc.*, 89 Ohio St.3d 261, 268, 730 N.E.2d 972 (2000). The purpose of considering the time value of money when granting these awards is to make the prevailing party truly whole, *see Federated* at ¶ 12; *Parker* at 268, and to prevent the losing party from enjoying the use of that money, *see Parker* at 268.

{¶ 37} The logic behind considering the time value of money when awarding compensatory damages and postjudgment interest also applies when

awarding attorney fees. Prevailing plaintiffs who have paid their attorneys over the course of the lawsuit and attorneys working on a contingent-fee basis have been deprived of the use of their money throughout the lawsuit. *See Heder v. Two Rivers*, 255 F.Supp.2d 947, 957 (E.D.Wis.2003). Thus, to fully compensate those people when they are awarded attorney fees, a court must award the present value of the attorney fees. *See id.* Considering the time value of money is an effective way to achieve that goal. *See id.* at 957 (a "delay enhancement" can be awarded when a significant amount of time has passed since the fees and costs were incurred in order to compensate for the time value of money and inflation).

{¶ 38} Therefore, I conclude that courts should consider the time value of money as a factor in determining whether an enhancement to the lodestar calculation is necessary, in addition to the Prof.Cond.R. 1.5(a) factors that are not subsumed in the lodestar. In considering the time-value-of-money factor, courts should consider the period of time the attorneys worked on the case and any unreasonable delays caused by the parties, as well as the type of fee agreement entered into between the attorney and the prevailing party. Considering the time value of money as a factor in whether to enhance the lodestar when the prevailing party provides objective and specific evidence necessary to support the enhancement will help to make the prevailing party whole.

{¶ 39} While the lower courts did not consider the time value of money in the present case, I would not remand for consideration of that factor, because appellees, Phoenix Lighting Group, L.L.C., and Jack Duffy and Associates, Inc. (collectively, "Phoenix"), did not meet the burden of providing objective and specific evidence to prove that an attorney-fee enhancement was necessary, *see Perdue v. Kenny A.*, 559 U.S. 542, 553, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). While Phoenix placed an emphasis on appellant's, Genlyte Thomas Group, L.L.C., a.k.a. Daybrite, Capri, Omega's, conduct that drew out the litigation and made the

case more complicated than necessary, a fact that is important to the time-value-of-money factor, the evidence did not demonstrate that the lodestar amount was unreasonable or did not accurately reflect the fees that would have been charged under a standard hourly rate agreement.  In fact, Phoenix's expert testified that the $1.9 million attorney-fee award was a "reasonable fee."  Therefore, I agree with the majority opinion that Phoenix did not meet its burden, even considering the time value of money as a factor, to prove that an enhancement to the lodestar was necessary.

{¶ 40} For these reasons, I respectfully concur fully in the majority opinion and I encourage courts to consider the time value of money as a relevant factor when assessing whether enhancements to the lodestar are warranted.

_____

Witschey, Witschey & Firestine Co., L.P.A., Jeffrey T. Witschey, and Betsy L.B. Hartschuh, for appellees.

Tucker Ellis, L.L.P., Benjamin C. Sassé, and Michael J. Ruttinger; and Taft, Stettinius & Hollister, L.L.P., W. Stuart Dornette, Aaron M. Herzig, Bruce J.L. Lowe, and Julie A. Crocker, for appellant.

The Chandra Law Firm, L.L.C., Subodh Chandra, and Donald P. Screen, urging affirmance for amicus curiae, Ohio Employment Lawyers Association.

_____