[Cite as *Gauthier v. Gauthier*, 2024-Ohio-266.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| FORREST P. GAUTHIER, | : | APPEAL NO. C-220521 |
| | | TRIAL NO. A-1303244 |
| Plaintiff-Appellant, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| SU KANG GAUTHIER, | : | |
| Defendant-Appellee, | : | |
| and | : | |
| ROBERT A. KLINGLER, | : | |
| Defendant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: January 26, 2024

*Thomas E. Grossmann*, for Plaintiff-Appellant,

*Robert A. Klingler Co., L.P.A.,* and *Robert A. Klingler,* for Defendant-Appellee.

**CROUSE, Presiding Judge.**

{¶1} Plaintiff-appellant Forrest P. Gauthier ("Forrest") appeals from the trial court's judgment awarding defendant-appellee Su Kang Gauthier ("Su") $93,583.34 in attorney fees and costs. This appeal is the fourth appeal between Forrest and Su concerning issues that arose from their 2009 divorce, and the third appeal specifically concerning an award of attorney fees.

{¶2} In three assignments of error, Forrest challenges the trial court's award of fees and costs, contends that his due-process rights were violated, and contests the jurisdiction of this court to hear the appeal. Finding Forrest's arguments to be without merit, we affirm the trial court's judgment, bringing a long overdue and much needed resolution to the parties' dispute over attorney fees and costs.

## I. Factual and Procedural Background

{¶3} The prior appeals in this case provide guidance as to which billings submitted by Su's attorney, defendant Robert Klingler, may permissibly be recovered by Su in an award of attorney fees. It is accordingly necessary to delve into the procedural history of the parties' litigation in some detail.

{¶4} Forrest and Su were granted a divorce in 2009 by the Warren County Domestic Relations Court. A "Full Text Separation Agreement," which contained a personal-property agreement dividing the parties' personal property, was incorporated into the divorce decree. The parties subsequently entered into an addendum agreement in 2010 to resolve additional issues that arose over the division of their assets. Covered in the addendum agreement was the disposition of an IRS refund check and a lump-sum payment from Forrest to Su.

{**¶5**}    Forrest filed this action against Su and Klingler in 2013, alleging that Su had converted property awarded to Forrest under the personal-property agreement and that she had breached the agreement in doing so. The complaint additionally alleged that Su breached the addendum agreement by improperly negotiating an IRS refund check, that she converted the proceeds of that check, and that she breached the addendum agreement by failing to report a portion of a lump-sum payment from Forrest as alimony on her tax return. With respect to Klingler, the complaint alleged that he likewise breached an agreement concerning the negotiation of the IRS refund check and that he converted Forrest's refund proceeds.

{**¶6**}    The trial court granted summary judgment to Su and Klingler on all claims. This court affirmed the trial court's grant of summary judgment in *Gauthier v. Gauthier*, 1st Dist. Hamilton No. C-150037, 2016 Ohio App. LEXIS 4293 (Oct. 21, 2016) ("*Gauthier I*"). We held that the claims relating to the personal-property agreement arose out of the same transaction or occurrence that was the subject matter of a previously filed contempt action in Warren County and were therefore barred by claim preclusion and the jurisdictional-priority rule. And we held that after viewing the remaining claims in the light most favorable to Forrest, reasonable minds could only find in favor of Su and Klingler.

{**¶7**}    Su and Klingler filed a motion for an award of attorney fees and costs, alleging frivolous conduct under R.C. 2323.51. Su also sought an award of attorney fees and costs pursuant to the addendum agreement, which contained a provision stating that a prevailing party to any action brought to enforce a term of the agreement was entitled to recover reasonable attorney fees and costs arising out of the action.

3

{¶8} The trial court held a hearing on the motion and awarded Su and Klingler approximately $96,000 in fees and costs, which encompassed the total amount of fees and costs incurred in defending all claims raised in Forrest's complaint. This award was based on the trial court's finding that Forrest and his counsel acted frivolously in filing the underlying action. The court did not award fees pursuant to the provision in the addendum agreement. It found that it did not have jurisdiction to enforce that agreement because "this case was disposed as a matter of law under the jurisdictional priority rule."

{¶9} Both Su and Forrest appealed the trial court's judgment. In *Gauthier v. Gauthier*, 1st Dist. Hamilton Nos. C-170387 and C-170398, 2018-Ohio-4970 ("*Gauthier II*"), this court reversed the trial court's judgment. We held that the trial court erred in determining that the conduct of Forrest and his counsel in filing the underlying action was frivolous under R.C. 2323.51. *Id*. at ¶ 24 and 27. We also held that the court erred in determining that it did not have jurisdiction to award fees under the addendum agreement. *Id*. at ¶ 36. We remanded the cause to the trial court to determine whether the addendum agreement entitled Su to attorney fees and costs incurred defending the addendum-agreement claims and, if so, to determine the amount of fees and costs to which Su was entitled. *Id*. at ¶ 39.

{¶10} Following our remand, on September 25, 2019, Su filed a "motion for award of attorney fees and costs pursuant to the 2010 agreement between the parties." The motion asserted that Su was the prevailing party on the addendum-agreement claims and that she was entitled to fees incurred defending those claims. It further asserted that Klingler had reviewed his time entries and redacted any entries that were not directly related to the addendum-agreement claims.

**{¶11}** In support of the motion, Klingler provided a "second supplemental affidavit." The affidavit stated that Klingler had reviewed various documents in the case, including Forrest's deposition, defendants' motion for summary judgment, and Forrest's reply thereto, and had determined what percentages of each document dealt with the personal-property claim versus the addendum-agreement claims. The affidavit stated that Klingler had broken down any "block billed" entries in his billing records into single-task entries, and that he had redacted any billing entries that were not directly related to the addendum-agreement claims. After these revisions, Su sought $81,014 in attorney fees "which cannot be easily divided between addendum agreement claims and non-addendum agreement claims" and $5,099.50 in costs. The affidavit set forth Klingler's opinion "that *at least* two-thirds of this remaining attorney fee amount was directly related to and necessary for the defense of the addendum-related claims." (Emphasis sic.)

**{¶12}** In March 2020, Su filed updated time records documenting the additional fees and costs incurred. Klingler also filed a "third supplemental affidavit," stating that the defendants, for the time billed up to November 14, 2018, "were seeking two-thirds of the total fees and costs they incurred, to account for the First District Court of Appeals ruling that fees and costs were not recoverable for 'frivolous conduct' on the personal property claims, but only contractually, for the 'addendum agreement' claims." But the affidavit specified that for the time billed after November 14, 2018, defendants were seeking recovery in full for all time billed because "all attorney time spend [sic] after that date was directed only to the recoverable 'addendum agreement' claims."

**{¶13}** The affidavit further stated that Klingler had updated his billing rate for all entries, regardless of when the actions described therein were performed, from an hourly rate of $425 to a rate of $495. The affidavit explained that Klingler's hourly rate was $495 from January of 2017 until it was raised to $545 in January of 2019. Klingler did not seek to apply this most recent rate. The affidavit stated, "It is appropriate to use current billing rates in fee applications for past time expended on a case, to account for a delay in payment over years."

**{¶14}** The affidavit specifically set forth the amount of attorney fees sought for two thirds of the time billed before November 14, 2018, and for all time billed after that date, along with the requested costs. Altogether, Su requested an award of $93,583.34.

**{¶15}** After determining that Su was the prevailing party on Forrest's addendum-agreement claims and that she was entitled to attorney fees and costs incurred in defending those claims, the trial court conducted a hearing to determine the amount of fees and costs to award. In addition to Klingler's affidavit, Su presented affidavits from two expert witnesses, Lawrence Glassmann and Lynn Pundzak, stating that Klingler's billing records were consistent with the work in the case and that the rates billed were reasonable. Pundzak opined on Klingler's approach of only seeking two thirds of the time billed up to a certain date, stating that it was "a reasonable, perhaps even overly-generous, approach." She further approved of Klingler's adjustment of his hourly rate to $495, stating "hourly rates should be adjusted to current rate levels due to the fact that compensation for fees and expenses may not come until the end of the case."

6

{**¶16**} At the hearing, Forrest's counsel cross-examined Pundzak on the reasonableness of Klingler's fees and costs. Forrest attempted to call Su as a witness, but the trial court granted an oral motion to quash his subpoena of Su. The trial court also refused to allow Forrest to call Klingler as a witness and disallowed testimony by Forrest's counsel. The trial court awarded Su $93,583.34 in attorney fees and costs. After the hearing, Forrest gave an extensive proffer of the exhibits and testimony that he was disallowed from presenting in support of his arguments that he, and not Su, was the prevailing party on the addendum-agreement claims, that Su's misconduct prohibited her from being awarded fees under the addendum-agreement, and that Klingler's fees and costs were unreasonable.

{**¶17**} Forrest appealed the trial court's award of fees and costs. In *Gauthier v. Gauthier*, 1st Dist. Hamilton No. C-210239, 2022-Ohio-541 ("*Gauthier III*"), we again reversed the trial court's judgment to the extent that it awarded attorney fees and costs without allowing Forrest to cross-examine Klingler on the reasonableness of his fees and costs. *Id.* at ¶ 25. We otherwise determined that Su was the prevailing party on the addendum-agreement claims, that Su was entitled to recover fees and costs incurred in defending those claims, that the trial court did not err in quashing the subpoena of Su, and that the trial court did not err in prohibiting Forrest or his counsel from testifying. *Id.* at ¶ 20, 24, and 26. The cause was remanded for "the trial court to determine the amount of fees and costs to which Su is entitled and to issue an award accordingly, after allowing Forrest to examine Klingler as to the reasonableness of his fees and costs, should Forrest choose to do so." *Id.* at ¶ 30.

{**¶18**} On remand, the trial court scheduled a hearing for September 1, 2022, in compliance with this court's mandate. Approximately one week before the

scheduled hearing, Forrest filed a motion to reschedule because the hearing conflicted with a chemotherapy appointment. He asked the court to reschedule the hearing for September 14, 15, or 16. The trial court granted Forrest's motion, over Su's objection, and rescheduled the hearing for September 14, 2022. At approximately 9:00 p.m. on September 13, Forrest filed a motion to again reschedule the hearing because he had tested positive for COVID and could not travel to Cincinnati. The trial court, again over objection from Su, rescheduled the hearing to September 22, 2022. On that date, Forrest filed a motion for a continuance or a stay, asserting that he continued to suffer from COVID. The trial court denied Forrest's motion, offered to let him participate by Zoom, and conducted the scheduled hearing. Over Forrest's objection, the trial court limited the cross-examination of Klingler to one hour.

**{¶19}** At the close of the hearing, the trial court stated that Su was entitled to recover $93,583.34 in attorney fees and costs from Forrest. On September 26, 2022, the trial court issued an entry in accordance with its oral pronouncement. It is from this entry that Forrest now appeals.

## II. Award of Attorney Fees and Costs

**{¶20}** In his first assignment of error, Forrest argues that the trial court erred when it awarded attorney fees and costs to Su.

### A. Explanation of Basis for Fee Award

**{¶21}** Forrest first contends that the trial court failed to provide the rationale for its award, thus preventing meaningful appellate review.

**{¶22}** An award of attorney fees is reviewed for an abuse of discretion. *Buckeye Firearms Found. Inc. v. Cincinnati*, 2020-Ohio-5422, 163 N.E.3d 68, ¶ 36 (1st Dist.). When determining the reasonableness of fees, "[t]here is a strong

8

presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the 'lodestar,' is the proper amount for an attorney-fee award." *Id.*, quoting *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.,* 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 19.

**{¶23}** Despite the broad discretion accorded to the trial court in fashioning an award of attorney fees, "it must state the basis for the fee determination to allow for meaningful appellate review." *Shertok v. Wallace Group Gen. Dentistry For Today, Inc.*, 1st Dist. Hamilton Nos. C-190457 and C-190464, 2020-Ohio-4369, ¶ 53; *see Speigel v. Ianni*, 1st Dist. Hamilton Nos. C-220467, C-230012, and C-230036, 2023-Ohio-3809, ¶ 58. "It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination," as "[u]nless such an explanation is given, adequate appellate review is not feasible." *Phoenix Lighting Group* at ¶ 18, quoting *Perdue v. Kenny A.*, 559 U.S. 542, 558, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). While meaningful appellate review typically requires a decision from the trial court that explains its reasoning, it is sometimes possible to engage in meaningful appellate review if there is "a clear record from which the appellate court can discern the trial court's reasoning." *State v. Hunter*, 1st Dist. Hamilton No. C-200160, 2021-Ohio-2423, ¶ 25; *see State v. Chase*, 2d Dist. Montgomery No. 26238, 2015-Ohio-545, ¶ 17 ("Unless the reason or reasons for the trial court's decision are apparent from the face of the record, it is not possible to determine if the decision is reasonable without some explanation of the reason or reasons for that decision."); *Jones v. Sharefax Credit Union, Inc.,* 1st Dist. Hamilton No. C-210260, 2022-Ohio-176, ¶ 33 (same).

**{¶24}** Before announcing its award of fees at the close of the remand hearing, the trial court stated, "I have reviewed what was presented before and I have reviewed

the mandate from the Court of Appeals," and it awarded fees and costs in the amount of $93,583.34. The trial court subsequently issued a written entry in accordance with its oral pronouncement. The entry stated, "Following the examination of Attorney Klingler regarding the reasonableness of fees, the Court finds the amount of fees and costs to which Plaintiff Su Kang Gauthier is entitled is the sum of $90,183.67 in attorney fees and $3,399.67 in costs, for a total recovery in the amount of $93,583.34."

**{¶25}** Forrest challenges the trial court's fee award on the grounds that the trial court provided no supporting rationale stating the basis for the award and failed to conduct a lodestar analysis. Other than setting forth the amount of fees and costs awarded, the trial court's entry was silent as to the basis for the award. However, the trial court stated at the fee hearing that it had reviewed "what was presented before." While the trial court failed to specify what was encompassed in this review, it presumably included Klingler's submitted billing records and the affidavits from Pundzak and Glassmann opining on the reasonableness of the fees requested. That the trial court awarded the exact amount of fees and costs requested supports such a determination.

**{¶26}** This court has upheld fee awards where the trial court failed to specifically state the basis for its award or find that the fees requested were reasonable. *See Shertok*, 1st Dist. Hamilton Nos. C-190457 and C-190464, 2020-Ohio-4369; *Speigel*, 1st Dist. Hamilton Nos. C-220467, C-230012, and C-230036, 2023-Ohio-3809. In *Shertok*, appellant challenged the trial court's award of fees, asserting that the award was unreasonable and that the court failed to use the lodestar method. *Shertok* at ¶ 51. In rejecting these arguments, we stated:

In its entry awarding attorney fees to the defendants, the trial court noted that defense counsel submitted detailed and itemized invoices for legal services, and that Shertok did not object to the reasonableness of defense counsel's fees or invoices. The court incorporated into its entry copies of defense counsel's invoices and the court's own detailed notations on those invoices which reflected the hourly rate and number of hours worked. Therefore, we are persuaded that the court appropriately stated the basis for its use of the lodestar method in determining the award of fees. Given the uncontroverted evidence presented, we cannot say that the court abused its discretion in awarding the amount of fees that it determined were related to Shertok's frivolous conduct.

*Id*. at ¶ 55.

**{¶27}** In *Speigel*, the appellant similarly argued that the trial court failed to calculate a lodestar when awarding fees. *Speigel* at ¶ 58. While recognizing that it would have been better practice for the trial court to have specifically stated that it found the rates billed to be reasonable and that it accepted the lodestar provided by appellee, we upheld the trial court's award of fees where the court's entry referenced the exhibits appellee provided containing the lodestar calculation and the briefing on the reasonableness of fees, and where the court awarded the amount of fees requested, less approximately $5,000. *Id*. at ¶ 59. We stated, "based on the exhibits provided to and referenced by the trial court, we are able to review the trial court's award of fees and determine what the fees were based on." *Id*. at ¶ 60.

{¶28} In the case at bar, despite the trial court's failure to provide an explanation for its award of fees and costs, we are likewise able to determine what the award was based on. As stated, the trial court awarded the exact amount of fees and costs requested. This request was supported by affidavits from Klingler and two experts. Forrest presented no opposing expert testimony or affidavits challenging the reasonableness of the fees charged. While the trial court's judgment did not state that it had relied on these affidavits or on evidence submitted by Su—statements that were included in the *Speigel* entry—the court did state when announcing its award of fees that it had reviewed what had been previously presented. Because the award of fees and costs was the exact amount requested, the record clearly demonstrates that the trial court considered and relied on Klingler's affidavit and billing records and the expert affidavits.

{¶29} In fact, such a conclusion is even stronger in this case than it was in *Speigel*, where the trial court awarded approximately $5,000 less than the amount requested. *Speigel*, 1st Dist. Hamilton Nos. C-220467, C-230012, and C-230036, 2023-Ohio-3809, at ¶ 59. Where, as in this case, the trial court awarded the exact amount requested, no guesswork is involved in discerning how the trial court arrived at the amount awarded.

{¶30} The rationale for requiring a trial court to provide an explanation for its award is to allow an appellate court to conduct a meaningful review. If an appellate court cannot determine how the trial court derived its fee award, the reviewing court is unable to determine if the trial court abused its discretion. Here, we are able to discern exactly what the trial court based its award on and to conduct a meaningful review of that award. It would put form over substance and be a waste of resources if

12

we were to reverse and remand for the trial court to provide a rationale for its award, when the record on appeal leaves no doubt as to the answer to that question.

{¶31} We accordingly hold that on the facts of this case, where the trial court awarded the exact amount of fees requested, and where we are able to conduct a meaningful review of the award, the trial court did not err in failing to state the basis for its fee award.

{¶32} Forrest additionally argues that the trial court failed to consider the factors in Prof.Cond.R. 1.5 when awarding fees and costs. He asserts that an award of attorney fees involves a two-step analysis, in which the trial court must first calculate the lodestar, and then consider the factors in Prof.Cond.R. 1.5. We are not persuaded, as case law from both the Supreme Court of Ohio and this court establish that the factors in Prof.Cond.R. 1.5 are generally subsumed within the lodestar.

{¶33} In *Phoenix Lighting*, the court explained that "nearly all of those [Prof.Cond.R. 1.5] factors are included as part of the hourly fee used to calculate the lodestar." *Phoenix Lighting*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, at ¶ 16. The court elaborated, stating:

> It is simple economics that an attorney charges an hourly rate that takes into account the difficulty of the question involved, the opportunity cost, the time limitations imposed by the client, the skill requisite to perform a legal service, the attorney's professional relationship with the client, and the fee customarily charged in the jurisdiction for similar legal services.

*Id*. at ¶ 17. It accordingly held that "the factors in Prof.Cond.R. 1.5(a), including the results obtained, are subsumed within the lodestar; they do not enhance the lodestar." *Id*.

**{¶34}** This court discussed the interplay between a lodestar calculation and the Rules of Professional Conduct in *Chapel v. Wheeler Growth Co.*, 1st Dist. Hamilton No. C-220662, 2023-Ohio-3988. We first explained that the two-step process for calculating an award of attorney fees set forth in *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145-146, 569 N.E.2d 464 (1991), and espoused by Forrest, was modified "based in part on the United States Supreme Court's holding in *Perdue v. Kenny A.* that 'factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar.' " (Internal citation omitted.) *Chapel* at ¶ 21, quoting *Perdue,* 559 U.S. 542, 546, 130 S.Ct. 1662, 176 L.Ed.2d 494. We then stated:

> Thus, the lodestar amount enjoys a "strong presumption" as the accurate calculation of attorney's fees, and "[e]nhancements to the lodestar should be rarely granted and allowed only when the prevailing party has presented evidence that * * * the lodestar does not take into consideration any factor that may be properly considered in determining a reasonable fee," namely, the Prof.Cond.R. 1.5(a) factors. *Phoenix Lighting* at ¶ 19. The presumption in favor of the lodestar amount and the limits on deviating from it apply whether the appellate court is reviewing a trial court's upward or downward deviation. *See Calypso Asset Mgt., LLC v. 180 Indus., LLC*, 2021-Ohio-1171, 171 N.E.3d 790, ¶ 38 (10th Dist.).

14

*Id.*

**{¶35}** Here, the trial court did not deviate from the amount of fees and costs requested, and the record does not establish that the lodestar calculation failed to take into consideration the factors in Prof.Cond.R. 1.5. We therefore find no error on the part of the trial court in failing to separately discuss those factors. *See Phoenix Lighting* at ¶ 17.

**{¶36}** Forrest further takes issue with the trial court's acceptance of Klingler's application of an increased hourly rate to work that was performed when a lower rate was in effect.

**{¶37}** "[A] court has the 'discretion to choose either current or historical rates so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees.' " *Card v. Principal Life Ins. Co.*, E.D.Ky. No. 5:15-139-KKC, 2022 U.S. Dist. LEXIS 195671, 19 (Oct. 27, 2022), quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir.2007). Courts have allowed an increase to historical rates to compensate for delays in payment. *See Perdue*, 559 U.S. at 555-556, 130 S.Ct. 1662, 176 L.Ed.2d 494 (holding that an increase in rates "to compensate for delay in reimbursement for expenses must be reserved for unusual cases. In such exceptional cases, however, an enhancement may be allowed, but the amount of the enhancement must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal," and that a rate increase may be appropriate where "an attorney assumes these costs in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense"); *Bennett v. Martin*, 10th Dist. Franklin No. 13AP-99, 2013-Ohio-5445, ¶ 55 (upholding a trial court's award of 2010 billing rates for work performed from 2005 to 2008).

15

{¶38} Pundzak discussed and approved of Klingler's increased rates. Her affidavit stated that "hourly rates should be adjusted to current rate levels due to the fact that compensation for fees and expenses may not come until the end of the case," and it advised that Klingler's requested rate of $495 was "reasonable and consistent with the hourly rates charged by other similarly experienced and skilled attorneys in the Cincinnati legal community."

{¶39} As we have discussed, the trial court relied on Pundzak's affidavit when issuing its award of fees and costs. The court was also aware that Su's motion for attorney fees had been pending since 2014, that Su had yet to be compensated for the fees to which she was entitled, and that Klingler's hourly rate increased during that time period. Forrest introduced no competing expert testimony on the reasonableness of his hourly rate or an increase to his rate for historical work. For these reasons, we find no abuse of discretion by the trial court in accepting an increased hourly rate of $495 for all work performed by Klingler.

### B. Quantitative Analysis

{¶40} Forrest next argues that the trial court erred by engaging in a purely quantitative analysis when fashioning its fee award, contending that it was error for the court to reduce its award of fees based on a simple ratio of successful claims. He challenges in this argument Su and Klingler's request for, and the trial court's award of, two thirds of the fees and costs incurred until November 14, 2018. Forrest contends that this method of calculating fees and costs "falsely assumed that all time billed by Klingler was equally divided into three issues all of which magically took exactly the same amount of time attorney time [sic: the personal property claims and the two Addendum claims."

16

{**¶41**} Forrest's complaint asserted claims under both the addendum agreement and the personal-property agreement. In *Gauthier II*, 1st Dist. Hamilton Nos. C-170387 and C-170398, 2018-Ohio-4970, at ¶ 38-39, we held that because Forrest and his counsel had not acted frivolously in filing the underlying action, Su was only entitled to attorney fees and costs incurred defending the addendum-agreement claims, as the addendum agreement contained a provision entitling the prevailing party to recover related fees and costs.

{**¶42**} Pursuant to *Gauthier II's* mandate, Klingler eliminated from his billing records any entries concerning the personal-property-agreement claim. He submitted a "second supplemental affidavit" explaining that, of the remaining entries, certain entries "cannot be easily divided between addendum[-]agreement claims and non-addendum[-]agreement claims." The affidavit explained that for these entries, Su only sought to recover two thirds of the fees incurred up to a certain period of time. As set forth in the affidavit, Klingler arrived at the two-thirds figure by reviewing various documents in the case and determining what percentages of each document dealt with the personal-property claim versus the addendum-agreement claims. The trial court awarded fees in accordance with Su and Klingler's request, which included awarding only two thirds of the fees and costs incurred until November 14, 2018.

{**¶43**} On this record, it is clear that the trial court did not award fees based purely on a quantitative analysis or ratio of successful to unsuccessful claims. In fact, Su and Klingler prevailed upon all claims asserted in Forrest's complaint. Rather, the record establishes that Su and Klingler provided a lodestar to the trial court, along with affidavits from two experts opining on the reasonableness of the billing rates used to calculate the lodestar. For the entries predating November 14, 2018, they only

sought compensation for two thirds of the overall lodestar amount. Pundzak's affidavit opined on this, stating that it was "a reasonable, perhaps even overly-generous, approach."[1]

**{¶44}** For the reasons set forth above, the trial court did not rely on a so-called "quantitative analysis" or abuse its discretion in awarding this amount.

### C. Propriety of Fees Awarded

**{¶45}** Forrest contends that the trial court abused its discretion by awarding fees for time billed before the addendum agreement was executed and for claims not arising under the addendum agreement.

**{¶46}** We review a fee award for an abuse of discretion and will not interfere with the trial court's award unless it is so high or low as to shock the conscience. *Chapel*, 1st Dist. Hamilton No. C-220662, 2023-Ohio-3988, at ¶ 20, quoting *Bittner*, 58 Ohio St.3d at 146, 569 N.E.2d 464; *Buckeye Firearms Found. Inc.*, 2020-Ohio-5422, 163 N.E.3d 68, at ¶ 36.

**{¶47}** As we review Forrest's argument, we are mindful that Ohio courts, when fashioning an attorney-fee award, "are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply [] do 'rough justice.' " *Chapel* at ¶ 20, quoting *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir.2016), quoting *Fox v. Vice*, 563 U.S. 826, 838, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011).

---

[1] Although Klingler and Su only requested to receive two thirds of the fees and costs incurred up to a certain date for entries that could not be easily divided between addendum-agreement claims and the personal-property claim, case law would have supported an argument that they were entitled to receive the full amount of fees and costs incurred. *See Edlong Corp. v. Nadathur*, 1st Dist. Hamilton No. C-120369, 2013-Ohio-1283, ¶ 16-17 (holding that "it is not always possible to divide attorney fees for distinct claims" and "the inability of a prevailing party to allocate attorney fees for discrete claims does not necessarily render a fee award for the full amount unreasonable.").

**{¶48}** Su was only entitled to an award of fees and costs incurred defending the addendum-agreement claims. *See Gauthier II*, 1st Dist. Hamilton Nos. C-170387 and C-170398, 2018-Ohio-4970. It was Forrest's obligation to parse Klingler's fee request line by line to establish instances where he billed for time unrelated to the addendum agreement. *See Chapel* at ¶ 24. At the remand hearing, Forrest's counsel questioned Klingler on less than a handful of his more than 200 submitted entries. And he did not have the fee statements, which contained entries dating back to 2013, present in court to show Klingler.

**{¶49}** Klingler was first questioned about time billed for drafting a memorandum in opposition to a motion for a continuance in March 2015. He stated that he had no recollection of this entry and that he could not answer any related questions without looking at his records. Counsel did not show Klingler the records, presumably because he did not have copies of them with him in court. Klingler was next questioned about time billed by both himself and an associate in August 2014 related to a deposition of Su. He again stated that without examining the actual records, he could not address the alleged discrepancy. Again, counsel did not show Klingler the records. Forrest's counsel last asked Klingler about four entries that counsel contended related only to nonaddendum-agreement claims. Klingler yet again stated that he could not respond to the question and that he did not recall whether the entries pertained only to nonaddendum-agreement claims. And yet again, counsel did not show Klingler the records.

**{¶50}** Forrest quite simply failed in his obligation to parse Klingler's billing records and identify instances of improper billing. *See Chapel*, 1st Dist. Hamilton No. C-220662, 2023-Ohio-3988, at ¶ 24. Klingler was questioned on a de minimis portion

of his entries and he was not provided a copy of the entries to review. A party "cannot identify only a few entries" out of more than 200 dating back approximately ten years and "reasonably expect" a reviewing court to significantly reduce the requested amount of fees and costs. *See id.* On this record, we find no abuse of discretion by the trial court in its award of fees and costs.

**D.  Block-Billed Entries**

{¶51}  Forrest next argues that the trial court erred by awarding attorney fees that included blocked-billed entries. Although he contends that the trial court "did not investigate the many instances of block billing," he fails to direct this court to any entry in Klingler's records that he alleges contains block billing. Rather, he argues that Klingler improperly comingled time in the records for claims that were compensable with claims that were not. In his reply brief, Forrest further takes issue with Klingler's alleged billing in quarter-hour increments, rather than in tenths-of-an-hour increments.

{¶52}  In *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 7, the court declared that it would not "grant attorney-fee applications that include block-billed time entries." It defined block billing as "lumping multiple tasks into a single time entry." *Id.* at ¶ 6, quoting *Tridico v. Dist. of Columbia*, 235 F.Supp.3d 100, 109 (D.D.C.2017). The comingling of time spent simultaneously working on different claims is not block billing. An example of block billing would be where an attorney bills for both time spent on legal research and time spent drafting a motion for summary judgment in the same entry. But, for example, an attorney submitting an entry for work on a motion for summary judgment that covered both compensable and noncompensable claims is not block billing.

**{¶53}** With respect to Forrest's argument concerning Klingler's entries that were denoted in quarter-hour, rather than tenths-of-an-hour, increments, this court need not consider the argument as it was raised for the first time in Forrest's reply brief. *See State v. Pitts*, 2022-Ohio-4172, 201 N.E.3d 983, ¶ 14 (1st Dist.). Nonetheless, because Su touched upon this issue in her response to Forrest's block-billing argument, we briefly address it.

**{¶54}** First, while the court in *Rubino* also held that future attorney-fee applications must state "the time expended on each task denoted in tenths of an hour," the increments in which time is denoted is a separate concern than the block billing challenged by Forrest. *Id.* at ¶ 7. Second, out of over 200 entries on Klingler's fee application, only 16 entries were denoted in quarter-hour increments.[2] Pundzak opined on this when reviewing Klingler's fee application, stating that any overcharge resulting from this billing was approximately $371.25. This amount is de minimis in comparison to the approximately $93,000 awarded by the trial court.

**{¶55}** In light of this, and given that Forrest has not identified any specific block-billed entries for our review, we find Forrest's block-billing argument to be without merit and find no abuse of discretion on the part of the trial court in its award of fees and costs.

### E. Su's Alleged Misconduct

**{¶56}** Forrest last argues that the trial court erred in awarding fees and costs resulting from Su's misconduct.

---

[2] We do not consider entries denoted in full- or half-hour increments, as such entries are also in tenths-of-an-hour increments.

{¶57} We rejected a nearly identical argument in *Gauthier III*, 1st Dist. Hamilton No. C-210239, 2022-Ohio-541, and we do so again now. In *Gauthier III*, Forrest argued that the trial court erred in awarding fees and costs that were incurred as a result of Su's breaches and misconduct and where Su had unclean hands and was guilty of frivolous and fraudulent conduct. *Id*. at ¶ 28 and 29. We rejected both of these arguments, finding no merit to the allegations that the trial court's award was attributable to any alleged breach or misconduct by Su, and stating that, as the prevailing party in Forrest's action to enforce the addendum agreement, she was entitled to recover related fees and costs. *Id*. Forrest's argument is summarily disposed of on the authority of *Gauthier III*.

{¶58} In summary, we find no abuse of discretion in the trial court's award of attorney fees and costs to Su, and we overrule the first assignment of error.

### III. Alleged Due-Process Violations

{¶59} In his second assignment of error, Forrest argues that the remand hearing held by the trial court violated his due-process rights.

#### A. Forrest's Presence at the Remand Hearing

{¶60} Forrest first argues that he had a due-process right to be present at the remand hearing determining the reasonableness of the attorney fees that he was being ordered to pay. He contends that the remand hearing was the equivalent of a trial under R.C. 2311.01, which defines a trial as "a judicial examination of the issues, whether of law or of fact, in an action or proceeding," and that due process entitled him to be present at this critical stage of the proceeding. We need not determine whether the remand hearing constituted a trial, as we find that even if it did, no due-process violation resulted from Forrest's absence.

22

{¶61} In support of his argument, Forrest relies on *Lane v. Tennessee*, 315 F.3d 680, 682 (6th Cir.2003), which held that "[p]arties in civil litigation have an analogous due process right to be present in the courtroom and to meaningfully participate in the process unless their exclusion furthers important governmental interests." *Lane* relied on an earlier Sixth Circuit case, *Helminski v. Ayerst Laboratories*, 766 F.2d 208 (6th Cir.1985), in which the court considered whether, in a products-liability claim, the exclusion of a plaintiff (who was alleged to have suffered autism and arrested neurological development caused by his mother's prenatal exposure to the product at issue) from the liability phase of the proceedings denied the plaintiff due process. In discussing the right of a party involved in civil litigation to be present at trial, the court stated:

> Neither the Fifth Amendment's due process clause nor the Seventh Amendment's guarantee of a jury trial grants to a civil litigant the absolute right to be present personally during the trial of his case. *See Faucher v. Lopez*, 411 F.2d 992, 996 (9th Cir. 1969). We believe that the extent of a civil litigant's right to be present at trial is appropriately analyzed under the due process clause of the Fifth Amendment. Consistent with due process the right to be present may be sufficiently protected in the party's absence so long as the litigant is represented by counsel.

*Id*. at 213. The court further reasoned:

> Nonetheless, since an attorney is merely the representative or agent of the litigant and not the litigant's "alter ego," *Carlisle v. County of Nassau*, 64 A.D.2d 15, 19, 408 N.Y.S.2d 114, 117 (1978), a court may not

23

exclude arbitrarily a party who desires to be present merely because he is represented by counsel; such exclusion would violate the due process clause of the Fifth Amendment.

*Id.*

{¶62} We must examine the facts surrounding Forrest's absence from the proceeding to determine whether he was arbitrarily excluded. The remand hearing was first scheduled for September 1, 2022. Forrest filed a motion to reschedule the hearing because it conflicted with a chemotherapy appointment. The motion requested that the hearing be rescheduled for September 14, 15, or 16. The trial court granted Forrest's motion, over Su's objection, and rescheduled the hearing for September 14. At approximately 9:00 p.m. on September 13, Forrest filed a motion to again reschedule the hearing because he had tested positive for COVID and could not travel to Cincinnati. The trial court, again over objection from Su, rescheduled the hearing to September 22. On that date, Forrest filed a motion for a continuance or a stay, asserting that he continued to suffer from COVID.

{¶63} Forrest's counsel appeared at the scheduled hearing and explained to the court why he did not want Forrest to participate in the hearing by Zoom, stating:

And, yes, there was an offer of Zoom, but that is not something that is readily available to us, given how we prepared this case. Mainly, because I believe that when the attorney and the client are not together, there is not effective assistance of counsel and participation by the client in the proceeding.

\* \* \*

24

And Mr.—in this proceeding as well, Mr. Gauthier has been the one that has reviewed every time record and has reviewed every entry, has prepared the entire trial book with all the exhibits, which he is in Florida, and he has done all the work on it, and I very much needed him to be present with me to effectively present that defense that he prepared.

**{¶64}** Su objected to Forrest's request to continue the hearing and offered to give Forrest's counsel the opportunity to speak with Forrest after questioning Klingler. The trial court denied Forrest's motion and elected to proceed with the scheduled remand hearing. It stated:

I did set this. I gave you advanced notice for September 1st, and I continued it at your request to a date that you requested, which was the 14th. That was inconvenient for the Court. I had to be in Columbus, but I canceled my Columbus seminar and meetings that I had to do because I wanted to wrap this up. We needed to conclude this. This case is very, very old, so I did not go to Columbus, I stayed here to do your hearing. And then at the last minute your client got COVID, understood, and continued it again, so it has been continued and it is time to wrap it up, Sir.

I do think it's at the discretion of the Court when they set the date, and I set the date, and this is the date. I am sorry your client is not here. I'm so sorry he got COVID, it's a terrible disease and a terrible thing that's plagued this country for years now. It's so sad and so unfortunate that your client has got it, but we have afforded you and your client the

opportunity to be here by Zoom last time, as well as this time, and even right now, today, as we speak, but you have chosen not to go that route, and that's fine, but I am going forward with this hearing today.

{¶65} The trial court did not arbitrarily exclude Forrest from the remand hearing. It twice continued the hearing at Forrest's request. And it offered to allow Forrest to participate in the hearing by Zoom, as well to provide Forrest the opportunity to consult with his counsel during the hearing. Forrest declined the trial court's offer. Forrest's counsel seemingly represented to the trial court that Forrest, rather than counsel, had reviewed Klingler's billing records and "prepared the entire trial book with all the exhibits." But Forrest was represented by counsel, and it was counsel's role, not Forrest's, to cross-examine Klingler on his fee application.

{¶66} Forrest has failed to establish how his representation was impeded by his nonappearance and counsel's cross-examination of Klingler in his absence. The trial court's decision to proceed with the hearing, while offering Forrest the opportunity to participate via Zoom and consult with his counsel, was a fair resolution that balanced the rights of both parties in a case that, at the time, had been pending for nine years. As recognized in *Helminski,* Forrest did not have an absolute right to be present during the remand hearing, and because he was not arbitrarily excluded from it, no due-process violation resulted. *Helminski*, 766 F.2d at 213.

### B. Denial of Continuance

{¶67} Forrest next argues that the trial court's denial of his request for a continuance, that was requested because he suffered from COVID, violated his due-process rights.

**{¶68}** We review a trial court's decision to deny a continuance for an abuse of discretion. *Crown Asset Mgt., LLC v. Gaynor*, 1st Dist. Hamilton No. C-210157, 2022-Ohio-1468, ¶ 19. Relevant factors to be considered when ruling on a motion for a continuance include: "(1) the length of the requested delay, (2) whether other continuances have been granted, (3) the inconvenience to the litigants, witnesses, opposing counsel, and court, (4) whether the requested delay is for legitimate reasons or whether it is dilatory, (5) whether the defendant contributed to the circumstance that gives rise to the request for a continuance, and (6) other relevant factors." *Id.*; *see State v. Froman*, 162 Ohio St.3d 435, 2020-Ohio-4523, 165 N.E.3d 1198, ¶ 91.

**{¶69}** In this case, the motion for a continuance did not suggest a date to reschedule the hearing. Forrest's counsel stated at the September 22 hearing that "all we are asking for is that this be rescheduled when he does not have Covid and he can attend, which is not going to be some terminable long period. We expect that it may be fairly short." Continuing the hearing for the third time would have been an inconvenience to Su, who had objected to the prior two continuances obtained by Forrest. While Forrest's COVID diagnosis was a legitimate reason to request a continuance, his request cannot be evaluated in a vacuum. This was the third request for a continuance by Forrest in a case that had already been pending nine years. The trial court offered to let Forrest participate by Zoom, which, despite all protestations by Forrest to the contrary, was a fair offer that attempted to balance Forrest's rights with those of Su.

**{¶70}** Under these circumstances, the trial court's denial of Forrest's request for a continuance did not violate his due-process rights and was not an abuse of discretion.

27

### C. Limitation of Cross-Examination

**{¶71}** Forrest last argues under this assignment of error that the trial court erred by limiting his cross-examination of Klingler "to an arbitrary and insufficient hour," resulting in a violation of his due-process right to be heard and conduct a fair cross-examination.

**{¶72}** "Cross-examination of a witness is a matter of right, but the 'extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.' " *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993), quoting *Alford v. United States*, 282 U.S. 687, 691, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

**{¶73}** At the remand hearing, after the trial court denied Forrest's request for a continuance, it informed Forrest's counsel that he would have one hour to cross-examine Klingler. Counsel objected to the trial court's imposition of this time limit.

**{¶74}** Counsel first questioned Klingler on the factors in Prof.Cond.R. 1.5, including the novelty and difficulty of the legal questions involved in this case. Apparently of the belief that counsel was belaboring the point, the trial court suggested that he move on to a different line of questioning. Counsel continued to ask about the difficulty of the asserted claims. Klingler was provided a copy of both the complaint and answer and was asked related questions about those documents.

**{¶75}** The trial court interrupted to comment on the relevancy of counsel's line of inquiry and directed counsel to move on. Despite the trial court's instruction, counsel continued to question Klingler about statements in the pleadings. The trial court again interrupted, directing Klingler not to answer and stating, "That is not relevant to his attorney fees. Mr. Grossmann, you might note [sic] like his Answers or

28

how he answered or re-answered, but those are his Answers, okay? So this is about the attorney fees. Okay?"

{¶76} Counsel eventually questioned Klingler about a specific entry in his fee application. However, counsel did not have a copy of the records to show Klingler, and Klingler stated that he could not answer the questions asked of him without looking at the records. Klingler was then asked about his "contingency arrangement" with Su concerning the recovery of his legal fees. The trial court interrupted to inform counsel that 15 minutes of the allotted one hour remained.

{¶77} Further questions were asked about the fee arrangement between Klingler and Su, as well as regarding Klingler's commingling of time spent on addendum-agreement claims and personal-property claims in the fee application. The trial court informed counsel that only five minutes of the allotted time remained and encouraged him to question Klingler about "actual time records." Counsel used the remaining time, including an additional five minutes allowed by the court, to question Klingler about several specific entries in his fee application.

{¶78} While trial courts do have discretion with regard to the length of cross examination, a trial court generally should not impose an arbitrary time limit. Instead, it is better practice to allow the cross-examination to develop and then determine whether it is necessary to impose a time limitation. That being said, we find no abuse of discretion by the trial court in enforcing a time limit in this case. Forrest's counsel spent a majority of the allotted time questioning Klingler on matters that were, at best, tangential to the reasonableness of the attorney fees. Klingler was not questioned on a specific entry in his fee application until approximately 15 minutes of the allotted time remained. And when Forrest's counsel finally began questioning Klingler about

29

individual entries, he did not have the records present in court to show Klingler. Questions about the fee application were essentially fruitless, as Klingler could not recall information about specific entries occurring years prior.

{¶79}  Forrest's counsel could have presented the trial court with an itemized list of objections to Klingler's fee application prior to trial, which would have assisted in streamlining the hearing and focusing the trial court's attention on the disputed entries and matters that would be covered in cross-examination. He did not do so. Perhaps this was because Forrest, rather than counsel, had prepared such a review, as counsel told the trial court that Forrest "has prepared the entire trial book with all the exhibits, which he is in Florida, and he has done all the work on it, and I very much needed him to be present with me to effectively present that defense that he has prepared." Regardless, this type of document was not filed until after the trial court issued its fee award and was not considered by the court.

{¶80}  Under the circumstances of this case, the trial court's imposition of a time limit on the cross-examination of Klingler did not violate Forrest's due-process rights and was not an abuse of discretion. The second assignment of error is overruled.

### IV. Jurisdictional Arguments

{¶81}  In his third assignment of error, Forrest argues that this court lacks jurisdiction to hear this appeal because the entry appealed from was entered by the trial court absent jurisdiction.

### A.  Affidavit of Disqualification

{¶82}  Forrest raises two separate jurisdictional challenges. He first argues that the trial court was deprived of jurisdiction to issue the entry awarding fees and costs after he filed an affidavit of disqualification in the Supreme Court of Ohio. The

merits of Forrest's argument hinge on the timing of certain actions taken by both the trial court and the Supreme Court of Ohio.

**{¶83}** The trial court issued an oral ruling awarding fees and costs to Su at the remand hearing on September 22. Four days later, on September 26, it issued an entry in accordance with its oral ruling. That same date, Forrest filed an affidavit in the Supreme Court of Ohio seeking to disqualify the trial court from taking any further action. Forrest's affidavit was accepted on September 26.

**{¶84}** Forrest contends that the Supreme Court of Ohio's acceptance of his affidavit of disqualification deprived the trial court of jurisdiction to take any further action in the case. He relies on R.C. 2701.03(D)(1), which provides that:

> [I]f the clerk of the supreme court accepts an affidavit of disqualification for filing under divisions (B) and (C) of this section, the affidavit deprives the judge against whom the affidavit was filed of any authority to preside in the proceeding until the chief justice of the supreme court, or a justice of the supreme court designated by the chief justice, rules on the affidavit pursuant to division (E) of this section.

**{¶85}** Forrest argues that his affidavit was accepted on September 26 at 8:35 a.m., before the trial court's entry awarding fees and costs was issued on that day. He further argues that although the trial court issued its ruling on September 26, the entry was not journalized by the clerk of courts until September 27, and that the entry was not effective until it was journalized.

**{¶86}** Forrest filed a motion to dismiss his own appeal on this same ground. Attached to the motion was an email that Forrest posited was sent from the clerk's office for the Supreme Court of Ohio to his counsel, at 8:35 a.m. on September 26,

31

stating that the affidavit of disqualification had been filed. The motion to dismiss was denied by this court.

**{¶87}** Stated succinctly, a determination as to whether the trial court issued its entry absent jurisdiction depends on whether the entry was issued prior to the acceptance of Forrest's affidavit of disqualification on September 26. We find Forrest's argument that the entry was journalized on September 27 to be somewhat of a red herring. R.C. 2701.03(D)(1) deprives the trial court of "any authority to preside in the proceeding." Here, it is not disputed that the trial court issued the entry awarding fees and costs on September 26. While the entry may not have been journalized until the following day, the trial court took no further action with respect to the entry after September 26. The point in question here is not when the trial court's order took effect, but when it was issued.

**{¶88}** The entry from the Supreme Court of Ohio accepting Forrest's affidavit of disqualification is date stamped, not time stamped. The same is true of the trial court's entry awarding fees and costs. Thus, on the record before us, we are unable to discern which entry was issued first, and we cannot find that the trial court issued its award of fees and costs absent jurisdiction to do so.

**B.  Pending Motions Before the Trial Court**

**{¶89}** Forrest next argues that the entry appealed from is not a final, appealable order because both parties have unresolved attorney-fee motions pending before the trial court. He contends that this court should remand the cause to the trial court for it to address the pending fee motions.

**{¶90}** Forrest relies on App.R. 4(B)(2) to support his argument. App.R. 4(B)(2) contains a tolling provision with respect to the filing of a notice of appeal. It

provides that if certain postjudgment motions are timely filed, "then the time for filing a notice of appeal from the judgment or final order in question begins to run as to all parties when the trial court enters an order resolving the last of these post-judgment filings." App.R. 4(B)(2). A motion for attorney fees is one of the specified postjudgment motions, that if timely filed, tolls the time for filing a notice of appeal. *See* App.R. 4(B)(2)(e).

**{¶91}** In addition to setting forth the tolling provision, App.R. 4(B)(2) provides that:

> If a party files a notice of appeal from an otherwise final judgment but before the trial court has resolved one or more of the filings listed in this division, then the court of appeals, upon suggestion of any of the parties, shall remand the matter to the trial court to resolve the postjudgment filings in question and shall stay appellate proceedings until the trial court has done so.

Forrest relies on this provision to argue that the matter should be remanded to the trial court for it to rule on the pending fee motions.

**{¶92}** Forrest filed a notice of appeal from the trial court's September 26, 2022, entry awarding attorney fees and costs on October 23. On October 25, Su filed a motion for a supplemental award of attorney fees. And on October 26, Forrest filed a motion for an award of attorney fees and costs pursuant to R.C. 2323.51.

**{¶93}** The plain language of App.R. 4(B)(2) makes clear that the rule is intended to toll the time for appeal if certain postjudgment motions are timely filed. If a notice of appeal is filed prior to the postjudgment motions, the rule allows the parties to request that the court of appeals remand the case back to the trial court in order to

33

resolve those motions. The point of the rule is "to resolve confusion in the courts of appeals about the finality of a judgment and the proper disposition of an appeal if a party files a notice of appeal before all proper and timely post-trial filings are resolved or if a party makes a timely post-trial filing after the notice of appeal i[s] filed," resulting in judicial economy and avoidance of piecemeal litigation. *See* 2011 Staff Notes to App.R. 4(B)(2).

{¶94} Forrest failed to comply in a timely manner with App.R. 4(B)(2)'s requirement that, where a timely motion for attorney fees is filed after a notice of appeal is taken, a party must file a suggestion in this court requesting that we stay the appellate proceedings and remand the matter for the trial court to resolve the motions. He filed no such suggestion and waited to raise this issue in an assignment of error in his appellate brief. Forest did file pretrial motions challenging this court's jurisdiction, but none asked for a remand to resolve the pending attorney-fee motions. Forrest's notice of appeal was filed on October 23, 2022. On December 15, 2022, he filed a motion to dismiss the appeal based on his argument that the trial court lost jurisdiction to issue a fee award after the Supreme Court of Ohio accepted his affidavit of disqualification. On December 19, 2022, he filed a motion to stay appellate proceedings until this court ruled on his motion to dismiss the appeal. Su filed memorandums in opposition to both Forrest's motion to dismiss and motion to stay. On January 26, 2023, this court issued an entry denying Forrest's motion to dismiss the appeal, and we issued an updated scheduling order on February 2, 2023. On that same date, Forrest filed a notice advising this court of his intent to file a writ of prohibition in the Supreme Court of Ohio to prevent this court from proceeding with the appeal. On February 8, 2023, he filed a request to postpone briefing deadlines

pending resolution of his writ of prohibition. On April 21, 2023, after the Supreme Court of Ohio dismissed Forrest's writ of prohibition, this court again reset the briefing deadlines. After receiving an automatic extension of time to file his appellate brief, Forrest filed a motion for another extension of time to file the brief on June 26, 2023. The extension was granted over Su's objection.

**{¶95}** It is not in the interest of justice to remand this case, where the appeal has been pending since October 23, 2022, to have the trial court deal with separate and additional attorney-fee motions. Su's motion for attorney fees, which is the subject of the judgment on appeal, has been pending since 2014. Justice would not be served by delaying review of the trial court's judgment while additional motions for attorney fees are litigated. The history of this case and the unquestionably hostile relationship between the parties presents a real potential for an unending cycle of motions for attorney fees.

**{¶96}** For the preceding reasons, we find Forrest's argument to be without merit and hold that we have jurisdiction to proceed with the appeal. *See Jackson Tube Serv. v. Camaco LLC*, 2d Dist. Miami Nos. 2012 CA 19 and 2012 CA 25, 2013-Ohio-2344, ¶ 41-43 (where a notice of appeal was filed from a final order before the trial court ruled on a pending motion for a new trial, but where the appellant failed to request the appellate court remand the matter pursuant to App.R. 4(B)(2), the appellate court considered the merits of the appeal and held that the trial court was divested of jurisdiction to rule on the motion for a new trial).

**{¶97}** Forrest's third assignment of error is accordingly overruled.

## V. Conclusion

**{¶98}** Having held that we have jurisdiction to hear this appeal, that the trial court did not abuse its discretion in issuing an award of attorney fees and costs, and that Forrest's due-process rights were not violated by his absence from the remand hearing or the time limit imposed on the cross-examination of Klingler, we affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS** and **BERGERON, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.